UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


ERNEST HAMMOND, JR.
                                        CIVIL ACTION
VERSUS
                                        NUMBER 10-56-FJP-DLD
JACOBS FIELD SERVICES


**RULING**

Defendant Jacobs Field Services North America ("Jacobs") has
filed a Motion for Summary Judgment.[1]   The plaintiff, Ernest
Hammond, Jr. ("Hammond") has filed an opposition to this motion.[2]
For the reasons which follow, defendant's motion for summary
judgment is granted on the federal claims, and plaintiff's federal
claims are dismissed with prejudice.   The plaintiff's state law
claims are dismissed without prejudice because the Court exercises
its discretion under 28 U.S.C. § 1367 not to assume federal
jurisdiction over these claims.

I.   **Factual Background**

Hammond was first employed by Jacobs in 1996, and then again
in 1998 at the Exxon Lube facility in Port Allen after a gap in
employment.   The Exxon Lube facility packages motor oil, and

---

[1]Rec. Doc. No. 15.

[2]Rec. Doc. No. 18.

employees in this facility work in shifts and rotate among the various types of automated lines which package the oil. As an operator, plaintiff worked on the high-speed gallon line most often. His job duties involved climbing, balancing, stooping, kneeling, pulling, pushing, lifting, grasping, and using tools.

For security purposes, the Exxon facility where plaintiff worked required employees to use a gate pass assigned to each employee which is scanned to gain entry into the plant. This procedure is a safety measure which ensures that only authorized personnel have access to the facility and also allows Exxon to know how many people are in the facility in the event of an emergency. If an employee's badge is not used for an extended period of time, it is de-activated. It is against the rules of both Exxon and Jacobs for an employee to enter the facility on someone else's pass. This rule was discussed at a safety meeting which plaintiff attended during his employment.

In the year leading up to plaintiff's termination in March of 2008, plaintiff had suffered various health issues, including carpal tunnel, neck pain, back pain and weakness in the legs.[3] In February of 2008, after an extended sick leave, plaintiff attempted to return to work with a limited duty release. Jacobs Superintendent Brent Watts advised plaintiff that no limited or

---

[3]*See* Deposition of Earnest Hammond, Jr., Rec. Doc. No. 15-2, p. 10, lines 22-23.

light duty work was available at that time and he could not return to work until he obtained a full medical release. Plaintiff subsequently returned to the plant and attempted to enter the plant but his de-activated badge would not allow him entry. Instead of using the intercom to communicate with security, plaintiff against company policy followed another vehicle into the plant, thereby "piggybacking" on that individual's card, which he knew was expressly forbidden by Exxon and Jacobs. After entering the plant, plaintiff went to see Watts and was told to leave the plant because his presence was unauthorized. Plaintiff ignored this directive and attempted to see the Exxon plant manager Mark McClelland instead of leaving the premises. When plaintiff could not enter the secure door to McClelland's office, he allegedly began pounding on the door, resulting in McClelland's office contacting the police. Plaintiff denies pounding on the door but left the premises before an officer arrived at the plant.

On March 3, 2008, plaintiff met with Brent Watts and Jacobs employees Wayne Tyson and Darryl Fuentes to discuss the incident. During this meeting, plaintiff admitted that he entered the plant on someone else's badge and acknowledged that he knew this was against both Exxon and Jacobs' rules. His only excuse for violating the rules was he wanted to discuss his returning to work with someone.

Based on this security breach, Jacobs Project Manager Wayne

Tyson terminated plaintiff. This decision was later affirmed by McClelland, who told Tyson that even if Jacobs had not terminated the plaintiff, Exxon would have refused to allow the plaintiff entrance to the facility.

At the time of his termination, Jacobs also contends that plaintiff was unable to perform the essential functions of his job. In fact, Jacobs contends plaintiff could not perform ANY of his job duties. The record reflects that plaintiff has worked for other employees only for a few months since his termination because of his physical condition. Since his separation from Jacobs, plaintiff has received disability benefits and began receiving social security disability benefits in February of 2010.

Plaintiff filed an EEOC charge on May 22, 2008, alleging race and disability discrimination and retaliation. He filed this lawsuit in January of 2010 claiming that Jacobs has violated his rights under the Americans with Disabilities Act (ADA),[4] discriminated against him based on his race in violation of Title VII of the Civil Rights Act of 1964,[5] and retaliation. Jacobs has now moved for summary judgment on all claims. Plaintiff has filed an opposition to the motion. This matter is now before the Court on defendant's motion for summary judgment. No oral argument is required. For reasons which follow, the Court grants defendant's

---

[4]42 U.S.C. § 12101 *et seq.*

[5]§701, *et seq.*, as amended 42 U.S.C. § 2000e *et seq.*

motion for summary judgment and dismisses plaintiff's federal claims with prejudice.  Plaintiff's state law claims are dismissed without prejudice.

## II.  Law and Analysis

### A.    Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6]  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[8]  If the moving party "fails to meet this initial burden, the motion must be denied,

---

[6]Fed. R. Civ. P. 56(c);  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[8]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (*quoting Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

regardless of the nonmovant's response."[9]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[10]  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[11]  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[12]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[13]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for

---

[9]*Id.* at 1075.

[10]*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[11]*Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[12]*Wallace*, 80 F.3d at 1048 (*quoting Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[13]*McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

trial.[14]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[15]

## B.    Time-Barred Claims

Jacobs contends that while plaintiff's EEOC charge of May 2008 complains of race and disability discrimination and retaliation, plaintiff has included in his lawsuit harassment complaints of being drug tested when returning from leave; not being provided light duty or alternative duty assignments prior to termination; his paycheck not being in its normal location; being unduly monitored while performing his job; and his superintendent speeding up the production line and requiring him to manually cap bottles. Jacobs contends none of the above claims are contained in plaintiff's EEOC charge and thus are not properly before the Court since incidents that are not addressed in or reasonably related to Charges of Discrimination filed with the EEOC cannot form the basis

---

[14]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[15]*Id.* at 248, 106 S.Ct. at 2510.

for Title VII or ADA claims in a subsequent lawsuit.[16]

Jacobs also contends the above claims are time barred. The record reveals that the plaintiff filed his EEOC charge in March of 2008. Under Title VII and the ADA, an EEOC charge of discrimination in a deferral state like Louisiana must be filed within 300 days of the last act of discrimination.[17] Thus, any claims which allegedly occurred outside the 300 day period are time barred. For this reason, Jacobs argues plaintiff has no claims based on events occurring prior to January 2007.

In his opposition, plaintiff essentially concedes he is not seeking to recover damages for any incidents occurring outside the 300 day time period at issue. Thus, the Court finds that the only claims properly before the Court are plaintiff's claims of race and disability discrimination and retaliation with respect to his termination and request for disability accommodation. The Court shall grant defendant's motion for summary judgment on all other federal claims which were not set forth in plaintiff's EEOC charge and are time barred. The Court now turns to a discussion of the claims that are properly before the Court.

---

[16]*Thomas v. Atmos Energy Corp.*, 223 Fed. Appx. 369, 376 (5th Cir. 2007)(citing *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)). *See also*, *Young v. City of Houston*, 906 F.2d 177 (5th Cir. 1990).

[17]42 U.S.C. § 2000e(5)(e)(1); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343 (5th Cir. 2001).

## C.    Americans with Disabilities Act ("ADA")[18]

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to [the] ... advancement, [or] discharge of employees, ... and other terms and conditions, and privileges of employment."[19]  To prevail on an ADA claim, "a plaintiff must prove that: 1) he has a 'disability'; 2) he is 'qualified' for the job; and 3) an adverse employment decision was made solely because of his disability."[20]  A "disability" is "any physical or mental impairment that substantially limits one or more major life activities."[21]  Major life activities include "working."[22] A plaintiff is "substantially limited" in working when he is:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not

---

[18]The Court notes that the ADA was amended in 2008 and those amendments took effect on January 1, 2009.  *See* ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008).  The Fifth Circuit has previously held that these amendments are not retroactive.  *See EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 n. 8 (5th Cir. 2009).  As such, the language and the law cited in this section reference the pre-amendment versions of the ADA.

[19]42 U.S.C. § 12112(a) (2005).

[20]*Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996).

[21]42 U.S.C. § 12102(2)(A)(2005).

[22]29 C.F.R. § 1630.2(i).

constitute a substantial limitation in the major life activity of working.[23]

However, even assuming plaintiff has a disability, to be a qualified individual with a disability, **the plaintiff must be "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."**[24] Relevant to the facts of this case, reasonable accommodations include "[j]ob restructuring; part-time or modified work schedules; [or] reassignment to a vacant position."[25] However, "[t]he ADA **does not require an employer to relieve an employee of any essential function of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so."**[26]

Plaintiff contends he was disabled, was denied a reasonable accommodation, and he suffered disability discrimination and retaliation when he was terminated. Jacobs concedes for the purposes of this motion that plaintiff's conditions (carpal tunnel syndrome, MS, and other health issues) constitute an impairment. However, Jacobs argues plaintiff failed to satisfy his burden of

---

[23]*Id.* §1630.2(j)(3)(i).

[24]42 U.S.C. § 12111(8)(2005)(emphasis added).

[25]29 C.F.R. § 1630.2(o)(2)(ii).

[26]*Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999)(emphasis added).

showing that plaintiff's impairments constitute disabilities under the law, reasonable accommodations were denied, or plaintiff experienced an adverse employment action because of his disability.

## 1.   Disabled Under the ADA

The United States Supreme Court has instructed that courts are to make an individualized determination of whether an employee's impairment constitutes a disability, taking into consideration measures taken by the employee to mitigate the effects of the impairment.[27]  Thus, the ADA requires a case-by-case determination of the nature of the employee's impairment: "An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person."[28]

The Fifth Circuit has stated:

> The substantial-limit requirement is the linchpin of § 12102(2)(A).  Without it, the ADA would cover any minor impairment that might tangentially affect major life activities such as breathing, eating, and walking.  For this reason, an impairment must not just limit or affect, but must *substantially* limit a major life activity.[29]

---

[27]*Griffin v. United Parcel Service, Inc.*, 661 F.3d 216,221 (5th Cir. 2011)(citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

[28]*Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 199, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (overruled on other grounds by the ADA Amendments Act of 2008).

[29]*Waldrip v. General Electric Company*, 325 F.3d 652, 656 (5th
(continued...)

The effects of an impairment must be severe to qualify as a disability under the ADA.[30]

"The particularized inquiry mandated by the ADA centers on substantial limitation of major life activities, not mere impairment." *Ivy*, 192 F.3d at 516. In *Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 (5th Cir. 1997), for example, this court held that alcoholism is not a disability, despite its effects on walking, talking, thinking, and sleeping, because these effects, though serious, are merely temporary. "Permanency, not frequency, is the touchstone of a substantially limiting impairment." Likewise, in *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187 (5th Cir. 1996), we held that cancer and its treatment did not substantially limit the major life activity of work. **"Obviously, [plaintiff's] ability to work was affected; but *far more is required* to trigger coverage under § 12102(2)(A)."** *Id.* at 191 (emphasis added). Many other cases follow this lead and hold that the effects of an impairment, even some serious ones, do not rise to a *substantial* limit.[31]

In *Dupre v. Charter Behavioral Health Systems of Lafayette, Inc.*, a former employee (Dupre) sued her former employer for terminating her based on her disability in violation of the ADA.[32] Dupre suffered from degenerative disc disease and degenerative facet joint disease in her back for which she had multiple

---

[29](...continued)
Cir. 2003), citing *Albertson's, Inc. v. Kirkinburg*, 527 U.S. 555, 565, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) (contrasting "mere difference" with a "significant restriction").

[30]*Id.*, citing *Toyota*, 534 U.S. at 197, 122 S.Ct. 681.

[31]*Id.* (citations omitted)(bold emphasis added).

[32]242 F.3d 610 (5th Cir. 2001).

surgeries. Charter claimed it terminated her for excessive absenteeism. Charter moved for summary judgment on Dupre's ADA claim and the district court found in favor of Charter.

On appeal, the Fifth Circuit noted that, "[w]hether an impairment is substantially limiting depends on '(1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact."[33] Dupre claimed the limitation on her ability to sit and stand for long periods of time constituted the substantial limitation of a major life activity. The Fifth Circuit held that "the 'condition, manner, or duration" under which Dupre was able to sit or stand was not significantly restricted as compared with the average person."[34]

Dupre also claimed a substantial limitation in the major life activity of working. To prove this limitation, Dupre was "required to demonstrate that her back injury precluded her from a class of jobs or a broad range of jobs."[35] The Fifth Circuit stated: " 'The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'"[36]

---

[33]*Id.* at 614, quoting *Sutton*, 119 S.Ct. 2139, 2145 (citing 29 C.F.R. § 1630, App., § 1630.2(j)).

[34]*Id.*, quoting 29 C.F.R. § 1630.2(j)(1). See also, *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3rd Cir. 1999).

[35]*Id.*, citing *Sutton*, 527 U.S. at 491, *Pryor v. Trane*, 138 F.3d 1024, 1027 (5th Cir. 1998).

[36]*Id.*, quoting *Pryor*, 138 F.3d at 1027 (quoting 29 C.F.R. §
(continued...)

The Fifth Circuit also noted that the Supreme Court has held: " 'If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.' "[37]

Dupre argued that her impairment had disqualified her from all manual labor, thus precluding her from a broad range of jobs. However, the court found that "Dupre has presented no evidence that she would be disqualified from all jobs requiring manual labor."[38] In fact, relying on the facts in the record, the court found that "Dupre was only precluded from jobs involving very strenuous physical activity (like laying brick), prolonged standing or sitting, heavy lifting, or prolonged walking. There exist, however, many jobs involving only light labor that Dupre seemed perfectly capable of performing. ... An inability to engage in the kind of intense physical exertion required of some jobs hardly disqualifies Dupre from all jobs involving manual labor."[39]

In this case, Hammond contends his carpal tunnel syndrome,

---

[36](...continued)
1630.3(j)(3)(I)).

[37]*Id.*, quoting *Sutton*, 119 S.Ct. at 2151.

[38]*Id.*

[39]*Id.* at 615.

back pain from a compressed disc, leg and arm numbness, and various related conditions, have substantially limited his major life activities of working, standing, running, and walking. Plaintiff contends he can no longer run, has trouble walking at times, and often cannot stand without holding something for support. Plaintiff claims he is limited in the major life activity of working in that he can no longer lift, stack, climb stairs, or load the machines.

The Court finds the reasoning and analysis by the Fifth Circuit of the claims in *Dupre* are directly on point and applicable in the case at bar. First, Hammond simply stating his belief that his impairments substantially limit his major life activities is insufficient summary judgment evidence to prove a disability under the ADA. Furthermore, the simple fact that plaintiff could no longer perform the job duties of the specific job he previously held does not constitute being precluded from a class of jobs or a broad range of jobs. In fact, plaintiff has failed to present any evidence to establish or support his contention. Plaintiff simply has insufficient evidence that any of his major life activities were substantially limited as defined by the law. Just because plaintiff contends his impairments have affected his ability to work does not trigger coverage under the law.

Thus, the Court finds that plaintiff has failed to satisfy his burden of proving that he suffers from a "disability" as defined by

the ADA or even creates an issue of fact in dispute.  However, the analysis set forth below shows that even if plaintiff were disabled under the ADA, he would still fail to carry his ultimate burden to recover under the law and facts of this case.

### 2.   Qualified Individual

The Court also finds that the plaintiff has failed to set forth a *prima facie* case of disability discrimination because he has failed to prove that he was qualified for his position, with or without reasonable accommodation.  The record is clear that since plaintiff could not perform any of the duties of his position, he was not qualified for his position under the law and facts of this case.

### 3.   Reasonable Accommodation

Plaintiff offers what he believes to be several reasonable accommodations which the defendant could have allowed: being assigned to the depalletizer machine; being allowed to train other employees; and, he would have been able to perform his job duties had his work not been "sabotaged."  Jacobs has provided summary judgment evidence to rebut each of these claims.  Plaintiff has failed to present summary judgment type evidence to create an issue of material fact which precludes the Court from granting a summary judgment.

Jacobs points out that the only time plaintiff requested to be assigned to the depalletizer was in 2006, which falls outside the

scope of this lawsuit. Further, Jacobs contends plaintiff provided no evidence that this request was reasonable under the circumstances. Jacobs also notes that plaintiff failed to produce summary judgment type evidence that he could perform **all**, and not just **some**, of the duties associated with this post.[40] As set forth above, it is not a reasonable accommodation to expect an employer to create an entirely new position or assign only one function of a job to an employee in an attempt at accommodation.

In opposition to plaintiff's request that he be allowed to train other employees, Jacobs has set forth a legitimate, non-discriminatory reason for not assigning this task to the plaintiff: there was no trainer position and no money to support someone who only performed the task of training.[41] Plaintiff has failed to controvert Jacobs' legitimate, non-discriminatory reason for denying this request.

Finally, Jacobs rebuts plaintiff's contention that he was "sabotaged" by his supervisor changing the speed of the lines on which plaintiff and his co-workers worked. Jacobs' legitimate, non-discriminatory reason for this activity was that the speed at

---

[40]Plaintiff testified in his deposition that he could perform some of the "cutting" activity required by this machine; however, this was not an actual job in itself but just one task of many associated with running this line. *See* Rec. Doc. No. 15-2, pp. 148-151.

[41]Plaintiff admitted in his deposition that he knew the company was having layoffs at the time this request was made. *See* Rec. Doc. No. 15-2, pp. 207-08.

which the line operated was at the discretion of the supervisor and could be changed to meet production goals. It is important to note that plaintiff admitted in his deposition that his supervisor sped up the lines of other Jacobs' employees, not just Hammond's. Plaintiff has failed to controvert this legitimate, non-discriminatory reason for the action taken, and has failed to show that he was singled out on any discriminatory basis in this regard.

The Court finds that plaintiff has failed to carry his burden of proving he was denied a reasonable accommodation. Jacobs' obligation under the law was to provide reasonable accommodation to an employee who can perform the essential functions of the job with such accommodation. Jacobs was not obligated under the law to create a new position for plaintiff in order to do this. Plaintiff has also failed to controvert the fact that he could not perform the essential functions of his job at the time of his termination. Under these circumstances, no reasonable accommodation was even required.

### 4. Plaintiff's Violation of Employer Rules

Plaintiff contends he was terminated because of his disability. However, Jacobs contends plaintiff was terminated solely because he violated the security rules of both Jacobs and Exxon. The record is clear that the prohibition of "piggybacking" or coming into the plant on someone else's security badge, was discussed at safety meetings where plaintiff was in attendance.

Under the facts of this case, the Court fails to see how Jacobs'
decision to terminate plaintiff for this admitted wrongful conduct
is in any way connected to plaintiff's disability.  Plaintiff has
failed to identify any non-disabled individual treated differently
and has totally failed to carry his burden of proof on this claim
or create a material fact in dispute.  As such, plaintiff's
disability claim shall be dismissed and summary judgment granted in
favor of Jacobs on this claim.

### D.  Race Discrimination under Title VII

Because plaintiff does not allege any direct evidence of
discrimination, the Court must apply the *McDonnell Douglas* burden-
shifting analysis.[42]  To survive summary judgment under *McDonnell
Douglas,* "the plaintiff must first present evidence of a prima
facie case of discrimination."[43]  If the plaintiff presents a prima
facie case of discrimination, then an inference of discrimination
arises, and the burden shifts to the employer to articulate a
legitimate, nondiscriminatory reason for the underlying employment
action.[44]  If the employer is able to state a legitimate reason for
the employment action, "the inference of discrimination disappears
and the plaintiff must present evidence that the employer's

---

[42]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct.
1817, 36 L.Ed.2d 668 (1973).

[43]*Id.* at 317.

[44]*Id.*

proffered reason was mere pretext for racial discrimination."[45]

To establish a prima facie case of discrimination, plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class or was treated less favorably than other similarly situated employees outside the protected group.[46]

Plaintiff, who is African-American, is clearly a member of a protected class, and he suffered the adverse employment action of being terminated. However, the Court finds that plaintiff has failed to satisfy the second and fourth prongs of his prima facie case. First, the discussion set forth earlier in this opinion establishes that after plaintiff returned to work from an extended medical leave, he was no longer "qualified" for his position. Second, plaintiff has failed to present any summary judgment evidence that white individuals were treated differently for violating the "piggybacking" rule or other similar security breaches. Plaintiff's only "evidence" consists of his own self-serving testimony regarding differential treatment.[47] This self

---

[45]*Id.*

[46]*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 1997)(per curiam); *Bryan v. McKinsey & Co. Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

[47]It should be noted that plaintiff's deposition testimony includes alleged instances of race discrimination against other (continued...)

serving "evidence" is simply insufficient under well-established law to carry plaintiff's burden of proving discrimination.[48]

Furthermore, even assuming plaintiff had set forth a prima facie case of race discrimination, Jacobs has carried its burden of establishing a legitimate, non-discriminatory reason for his termination in that plaintiff breached a known security rule. Plaintiff attempts to make light of this rule in his deposition testimony, but ultimately plaintiff admits that he entered the Exxon facility on another employee's badge, and that he knew such action was prohibited. Plaintiff has provided no summary judgment evidence that Jacobs' decision to terminate him for violating a clearly established security rule was a pretext for discrimination other than his self-serving testimony that he believed this decision was based on his race.

### E.    Other Race Discrimination Claims

Plaintiff has also made several claims which the Court has previously held to be time-barred and outside the scope of the EEOC charge. However, out of an abundance of caution, the Court will

---

[47](...continued)
African-American employees which occurred after plaintiff was terminated. As such, the testimony of these other employees on such matters is irrelevant since plaintiff does not have a claim for promotion denial and because what occurred following plaintiff's termination has no relevancy to how he was treated while employed by the defendant.

[48]*See EEOC v. Louisiana Office of Community Services*, 47 F.3d 1438, 1448 (5th Cir. 1995); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994).

briefly address these claims.

Plaintiff contends his work performance was unduly monitored by Superintendent James Watts. However, plaintiff admitted that part of Watts' duties was to oversee employee work. Plaintiff has presented no evidence that he was monitored more than any other similarly situated white employees.

Plaintiff complains there was a time his paycheck was not in its normal pickup location. However, plaintiff again fails to rebut Jacobs' legitimate, non-discriminatory reason for this: the check was kept in Watts' office for safekeeping because there was no safe place to store the check in the shipping area to which plaintiff had been temporarily assigned. Plaintiff ultimately received his check and suffered no damage from this incident.

Plaintiff's complaints about the adjustment of the speed line have been addressed in Section B of this opinion and need not be discussed at length again. For the same reasons set forth above, the Court finds Jacobs' evidence was not a pretext for discrimination. Jacobs' contention that the lines were paced at the discretion of the supervisor and the purpose was increased production was supported by the evidence in this case.

Plaintiff complains that he was required to cap containers by hand when the line malfunctioned. However, the record reflects that white employees also had to perform this task.

Finally, plaintiff argues he was subjected to drug testing

because of his race. Jacobs has shown that employees who have been away from work on leave for more than 30 days are subject to this screening. There is simply no evidence to show that plaintiff was somehow singled out for drug testing because of his race. Plaintiff relies on the deposition testimony of other African-American co-workers who claim that black employees who tested positive for drugs were fired, while white employees who tested positive were not. The Court notes the record reveals that plaintiff was tested and the results were negative. The plaintiff returned to work thereafter and was not terminated because of the drug test. James Moffatt, Administrator of the Occupational Health Services Department, testified that those drug tested employees identified by deposition testimony either actually failed drug tests or never had a positive test. In all instances, the record reflects that Jacobs applied this drug policy without regard to race.

Plaintiff has simply failed to establish a prima facie case of race discrimination, or to carry his ultimate burden of proving the legitimate, non-discriminatory reasons given by Jacobs are a pretext for race discrimination. Accordingly, summary judgment shall be granted in favor of Jacobs on all claims of race discrimination.

## F. Retaliation

Plaintiff also claims he was subjected to retaliation because

of his disability and his race. To establish a prima facie case of retaliation, an employee must show: (1) the he engaged in protected activity; (2) that he was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action.[49] If the plaintiff successfully presents a prima facie case of retaliation, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse employment action.[50] Upon answering this inquiry, the burden returns to the plaintiff to prove that the protected conduct was the "but for" cause of the adverse employment decision.[51] Plaintiff has argued, however, that a person bringing a retaliation claim need only offer evidence that retaliation was a factor, *i.e.*, that the defendant had "mixed motives," and such evidence may be circumstantial. The Fifth Circuit has recently explained why "but-for" causation is still the ultimate requirement:

> But as we explained in *Long v. Eastfield College*, 88 F.3d 300 (5th Cir. 1996), there are different tests for causation within the *McDonnell Douglas* framework - the initial

---

[49]*Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321 (5th Cir. 2009); *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 523 (5th Cir. 2008); *Burlington Northern and Santa Fe Railroad Company v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

[50]*Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011)(citing *Long v. Eastfield College*, 88 F.3d 300, 304-05 (5th Cir. 1996)).

[51]*Id.*, citing *Long*, 88 F.2d at 305, n 4 (citation omitted). See also *Septimus v. University of Houston*, 399 F.3d 601 (5th Cir. 2005).

"causal-link" required for making out a prima
facie case, and the "but for" causation
required after the employer has offered a
legitimate, non-discriminatory justification.
*Id*. at 305 n.4. ... Indeed, the Court's
opinion in *Xerox* affirms that the *Price
Waterhouse* mixed motive approach as applied in
the retaliation context preserves an
employer's ability to escape liability by
refuting but for causation. *Xerox*, 602 F.3d
at 333 ("[T]he mixed-motives theory is
probably best viewed as a defense for an
employer. This 'defense' allows the employer
- once the employee presents evidence that an
illegitimate reason was a motivating factor,
for the challenged employment action - to show
that *it would have made the same decision even
without consideration of the prohibited
factor*." (emphasis added)(footnote and
internal quotation marks omitted)); *see also
Manaway v. Med. Ctr. Of Southeast Tex.*, 430
Fed. Appx. 317 (5th Cir. 2011)("The burden then
shifts back to the employee to 'prove that the
protected conduct was a "but for" cause of the
adverse employment decision.'" (quoting
*Hernandez*, 641 F.3d at 129)). Thus, our
decision in *Xerox* did not dispense with this
final "but for" requirement for avoiding
summary judgment.[52]

Assuming *arguendo,* that plaintiff has made out a prima facie

case and Jacobs has offered a legitimate, non-retaliatory reason

for the adverse employment action, plaintiff has failed to

establish the "but for" causation required by the *McDonnell Douglas*

framework because he failed to offer sufficient proof that any

alleged retaliatory motive was a necessary cause of the decision to

terminate him. A plaintiff can only avoid summary judgment on "but

---

[52]*Nunley v. City of Waco*, 440 Fed. Appx. 275, 280, 2011 WL
3861678, *5 (5th Cir. Sept. 1, 2011).

for" causation by demonstrating "a conflict in substantial evidence on this ultimate issue."[53] Evidence is "substantial" if it is of a quality and weight such that "reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions."[54] The Court finds that plaintiff has not demonstrated such a conflict under the law and facts of this case.

There is nothing in the record, and indeed plaintiff has submitted no summary judgment evidence which would show that seeking a reasonable accommodation or his race was the "but for" cause of his termination. The Court is also convinced that Jacobs would have fired plaintiff for his security breach regardless of any other motivating factors. Thus, Jacobs is entitled to summary judgment on the plaintiff's claim of retaliation.

## III. Conclusion[55]

For the reasons set forth above, the Court finds that the plaintiff has failed to carry his burden of proof in establishing his claims for disability discrimination under the ADA, race discrimination under Title VII, or retaliation. Thus, summary judgment shall be granted in favor of Jacobs dismissing these claims with prejudice. The Court also grants summary judgment on

---

[53]*Hernandez*, 641 F.3d at 132 (quoting *Long*, 88 F.3d at 308).

[54]*Id.*

[55]The Court has considered all of the contentions of the parties whether or not specifically addressed herein.

all of the other federal claims which plaintiff failed to include in his EEOC complaint and which are also time barred. The Court declines to exercise supplemental jurisdiction[56] over plaintiff's remaining state law claims for emotional distress, mental anguish, humiliation, and embarrassment. These claims will be dismissed without prejudice.

Therefore:

IT IS ORDERED that defendant's motion for summary judgment shall be granted on all of plaintiff's federal claims based on disability discrimination, race discrimination, and retaliation. These claims shall be dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's state law claims shall be dismissed without prejudice.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, February 9, 2012.

FRANK J. POLOZOLA
MIDDLE DISTRICT OF LOUISIANA

---

[56]*See* 28 U.S.C. § 1367.